## THE CAROLINE M. WADE.

### CLARK & WILKINS CO. v. NEW YORK, N. H. & H. R. CO. et al.

(District Court, E. D. New York. June 2, 1923.)

**Shipping** ⊜81(1)—**Tug not within her right in creating quickwater causing collision of another vessel with a bridge abutment.**

> A transfer tug was within her right, when the river was clear, to put her head against a rack or float and operate her engine at full speed; but no such right existed when a tug with a tow was passing through a narrow draw, and it was guilty of negligence in creating quickwater, which caused the tow to strike the bridge abutment.

In Admiralty. Libel by the Clark & Wilkins Company against the steam tug Caroline M. Wade and the New York, New Haven & Hartford Railroad Company. Libel dismissed as against the tug, and decree entered against the other defendant.

Alexander & Ash, of New York City, for libelant.

Foley & Martin, of New York City, for the Caroline M. Wade.

Charles M. Sheafe, Jr., of New York City, for New York, N. H. & H. R. Co.

CAMPBELL, District Judge. This is a suit in admiralty to recover for injuries suffered by the schooner Jesse L. Leach, the property of the libelant, in hitting the abutment of the Willis Avenue bridge. The libel was filed by Clark & Wilkins Company against the steam tug Caroline M. Wade and the New York, New Haven & Hartford Railroad Company.

On July 1, 1920, the steam tug Caroline M. Wade took the schooner Jesse L. Leach, loaded with kindling wood, in tow on a hawser and proceeded up to Ninety-Sixth street, East River, where she picked up the Leach on the Wade's starboard side. She then continued up the Harlem River, bound for a point on the Manhattan side above the Willis Avenue bridge. When the said steamtug Wade, with the schooner Leach in tow, was about 1,500 feet from the Willis Avenue bridge, she blew the proper signal to the bridge tenders to open the draw. The day was clear, light winds, with a strong ebb tide, which sets in toward the abutment on the Bronx side of the draw.

On the Bronx side of the Harlem River, a short distance below the land abutment of the Willis Avenue bridge, the respondent the New York, New Haven & Hartford Railroad Company had a terminal, with two float bridges, where railroad freight cars were loaded on or unloaded from floats, which floats are brought to or taken from said terminal by steam transfer tugs. Immediately south of said float bridges there was quite a space, known as the Basin, and between the most northerly float bridge and the land abutment of the said bridge there was a small space known as the hole.

When the Wade, with the Leach in tow, on July 1, 1920, signaled the bridge tender of Willis Avenue to open the draw, a transfer tug started down the river toward the Wade and her tow, and then headed into the said terminal of the respondent New York, New Haven & Hartford Railroad, and remained with her bow against a float or float bridge; her stern being in the direction of the Manhattan shore. At

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

first the transfer tug seemed to be operating her engine under one bell, but soon was operating it at full speed. By this time the Wade with her tow was about 400 or 500 feet from the transfer tug, whereupon the Wade blew an alarm signal, to which the transfer tug gave no signal in reply, and the Wade again blew the alarm.

During the time the signals were being given the Wade, with her tow, was rapidly approaching the opening of the bridge caused by turning the draw, and seeing a man in the rear of the pilot house of the transfer tug, who appeared to be writing, but looked up, the master of the Wade called twice with the aid of a megaphone and asked those on board the transfer tug to stop the engine, but received no response. The transfer tug, which the master of the Wade then recognized as the No. 10, continued her engine at full speed, and as the tug was stationary the operation of the propeller raised a strong quickwater astern of the transfer tug, through which the Wade with her tow was obliged to pass, as it was impossible for the Wade with her tow to stop at that time.

As the quickwater from the transfer tug No. 10 struck the bow of the Leach, it threw the head of the Leach and the Wade strongly in the direction of the center pin of the bridge and the Manhattan shore, whereupon the master of the Wade threw his helm to port and straightened up the head of her tow, but as the quickwater from the transfer tug struck the stern of the Leach on the starboard side, it threw the head of the Leach and the Wade strongly in toward the abutment of the bridge on the Bronx side. The master of the Wade, seeing that his tow would strike the abutment of the bridge, and it being impossible to stop, immediately reversed his engine and attempted to back to save the Leach, the only proper maneuver at that time under the condition of the tide, and as a result the bowsprit of the Leach went clear, but the bow of the Leach struck the abutment, causing the damages of which complaint is made.

Some testimony was offered to show that the transfer tug No. 10 did not cause the damages alleged, but I am convinced that transfer tug No. 10 did cause the damages suffered by the Leach. The respondent New York, New Haven & Hartford Railroad Company offered testimony to show that there was no quickwater from transfer tug No. 10 which could have affected the Leach and Wade, or from any other transfer tug operated by it, but in its answer to the libel filed herein it alleges in subdivision No. 4 of its enumeration of the faults of the Wade alleged:

"(4) In that she attempted the dangerous maneuver of taking her tow through the quickwater of the transfer tug."

And this would appear to be an admission of the creation of the quickwater by the said respondent. The transfer tug was bound to exercise care and not interfere unnecessarily with navigation, and even although the said transfer tug was within her right when the river was clear to put her head against a rack or float and operate her engine at full speed, no such right exists when a tug with a tow is passing, because it endangers the safety of a passing vessel, and that act constituted negligence on the part of the said New York, New Haven & Hartford Railroad Company, respondent.

The master was not, nor was any member of the crew of transfer tug No. 10, produced as a witness on the trial, nor were their depositions taken; but it appears that they are no longer in the employ of the respondent railroad, and it further appears that the man who was master of the transfer tug No. 10 on September 1, 1920, was not one of the masters who had been for a long time with the company, but that he was taken on by the company during a strike, and ceased to be master of the transfer No. 10 a few months after that time. The transfer tug No. 10 had no right to endanger navigation by her quickwater, and should have reduced the speed, if she did not stop her engine, so that the Wade and her tow could safely pass through the comparatively narrow opening of the draw in said bridge.

Some expert testimony was offered by the respondent railroad to show that the quickwater could not be felt for more than 50 feet from the stern of the tug, but I believe the positive evidence offered by the master and the lookout of the Wade that the Wade and Leach did feel quickwater on the day in question. I therefore find that the respondent New York, New Haven & Hartford Railroad Company was negligent, in not slowing down or stopping the engine of transfer tug No. 10, to permit the Wade and the Leach to be navigated in safety, and was solely responsible for the damages suffered by the Leach. The City of Macon (D. C.) 20 Fed. 159. I further find that the schooner Jesse L. Leach and the steam tug Caroline M. Wade were free from blame for the injuries suffered by the Leach.

The libel against the Caroline M. Wade is dismissed, without costs, and a decree may be entered by the libelant against the respondent New York, New Haven & Hartford Railroad Company for the damages suffered by the Jesse L. Leach, with costs.